# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LARRY REYNOLDS )<br>    Plaintiff, )<br>)<br>v. )<br>) Case No.<br>STATE OF TENNESSEE GOVERNOR )<br>BILL LEE, STATE OF TENNESSEE, ) JURY DEMAND<br>WARDEN BRET ELLER, *Individually and* )<br>*in his Official Capacity*, NORTH EAST )<br>CORRECTIONAL COMPLEX, )<br>WARDEN BERT BOYD, *Individually and* )<br>*in his Official Capacity*, Officer STACY )<br>WILLIAMS, *Individually and in hers/his* )<br>*Official Capacity* and Unknown<br>Corrrections Officer(s).<br>    Defendant. | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff Larry Reynolds, by and through his undersigned counsel and files this his Complaint for damages bringing claims under 42 U.S.C. §§ 1983, 1988, the Constitution of the United States, premises liability and negligence / gross negligence under state law.

## PARTIES

1.  **Plaintiff**. At all times material hereto, Plaintiff's decedent Larry Reynolds was a resident of Northeast Correctional Complex located at Mountain City, Tennessee particulary located at 5429 Highway 67 West, Mountain City, Tennessee 37683 in Johnson County, Tennessee..

2.  **Defendants**. At all times material hereto, Wardens Brett Eller and Bert Boyd "wardens" were the lead supervisory officials that were responsible for the operation and security at NECX. On information and belief, Brett Eller and Bert Boyd had the authority and power to

1

change the classification of inmates like and take measures to ensure that Larry Reynolds was safe and secure, such as by providing for adequate video surveillance, or otherwise ensure his corrections officers were adequately trained to monitor, classify and protect inmates from harm. Warden Eller and Warden Boyd are sued in their individual and official capacity for actions taken under color of state law.

3. Defendant Officer Williams was an officer and employed by the State of Tennessee and Governor Bill Lee at NECX who were responsible for the supervision and monitoring of Inmates.

4. The State of Tennessee owns and operates the Tennessee Department of Corrections through its duly appointed commissioner.

5. Northeast Correctional Complex "NECX" is a prison based in Mountain City, Tennessee and is owned and operated by the State of Tennessee.

6. Bill Lee is the elected Governor for the State of Tennessee.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over these claims brought under the Constitution of the United States pursuant to 42 U.S.C § 1983 by virtue of 28 U.S.C. §§ 1331 and 1343, and pendent claims under Tennessee common law pursuant to 28 U.S.C. § 1367.

8. Venue lies in the United States District Court for the Eastern District of Tennessee, because the constitutional violations and injury to the Plaintiff's decedent occurred in Johnson County, Tennessee. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

9. Governor Bill Lee elected Governor for the State of Tennessee through Tennessee Department of Corrections (TDOC) operates NECX and is responsible for the inmates and

2

employees there. TDOC, through its correctional officers and employees at NECX, including the defendant wardens, knew of the threat that particular inmates posed in the months, weeks, and days leading up to Mr. Reynolds brutal attack. TDOC also knew that NECX was woefully understaffed and inmates were insufficiently monitored and secured. On information and belief, the State of Tennessee, NECX, and Warden Eller and Boyd created and willfully ignored an unreasonably dangerous situation and allowed Larry Reynolds to suffer this foreseeable harm.

10. On July 15, 2022 Larry Reynolds was in his assigned cell 59 in Unit 10 when two other inmates who were "known gang members" from different units entered Mr. Reynolds cell with fabricated and homemade knives manufactured from material and or items provided by the Defendants.

11. These inmates who were allowed to enter through an unsecured door stabbed, robbed, and threatened the life of Mr. Reynolds. Mr. Reynolds was brutally assaulted, beaten, and feared for his life.

12. Officer Williams and the Unknown Officers allowed assaulting inmates to entere through an unsecured and into a unit to cause harm. Furthermore, Defendant Williams along with other unknown officers did nothing to secure the attackers.

13. On information and belief, the attackers were designated and classified by the Defendant Wardens or in the alternative someone who the Wardens had given supervisory authority. The attackers were known gang members who had a history of violent acts. These inmates who conducted this brutal attack were assigned violent offenders when they entered prison. Somehow, this designation was ignored and and these attackers were allowed to have contact with Mr. Reynold who sufferd injury.

14. On information and belief, the Defendants, and other State of Tennessee and NECX employees acting under the control of the Defendant Wardens officials knowingly assigned these inmates despite knowledge that (1) they had a violent and aggressive criminal history; and (2) they would have access to other non-viloent inmates at NECX.

15. On information and belief, Larry Reynolds suffered as a direct result of these actions by these Defendants and others under the control of the Wardens and the State of Tennessee which allowed these inmates unfettered access other unsecured areas despite these warning signs, and by failing to adequately monitor the facility. Mr. Reynolds' attack can also be traced back to other, earlier and more systemic actions by the State of Tennessee, NECX, and the Defendant Wardens, namely, affirmative policies or customs which exacerbated understaffing issues and increased the risk that TDOC inmates would be assaulted by NEXC inmates.

16. **Understaffing**. Beginning in mid-2015, TDOC officials reduced salaries and also implemented a new staffing schedule that required TDOC guards to work 171.1 hours during each 28-day period before being eligible for overtime pay. These new policies—coupled with growing concerns regarding guards' safety—resulted in a mass exodus of correctional officers from TDOC facilities, which were already understaffed. No facility felt this change more than NECX, which as of 2017 had the highest vacancy rate in the State (20%, as compared to the state-wide vacancy rate of 10.7%). NECX has never fully recovered from the impacts of these policies; NECX thus was not equipped to adequately monitor and or secure its inmates, particularly with violent histories. [1]

---

[1] *See Little effect so far for big raise for prison security staff but TDOC hopeful that changes soon,'* WJHL News (March 16, 2022), *available at* https://www.wjhl.com/news/local/little-effect-so-far-from-big-raise-for-prison-guards-but-tdoc-hopeful-that-changes-soon/
(last accessed August 6, 2020).

17. **False Reporting of Assault Data and Lack of Oversight.** The State of Tennessee and TDOC has also come under fire in recent years for policies or customs which encouraged officials to write up or re-classify assaults as non-violent incidents such as "provocation" to keep violence statistics down. On information and belief, the State of Tennessee along TDOC actively chose to *downplay* inmate violence rather than address the underlying issues and *reduce* violence as would ensure the safety and security of inmates and corrections officers. A 2020 audit also found that TDOC leadership failed to provide oversight of correctional facilities which resulted in a failure to operate "safe and secure prisons."[2] Of note, the audit found that state-managed facilities like NECX were operating at "minimal staffing levels," which impacted safety and security, and otherwise failed to provide accurate, complete, and timely investigations into allegations of assault. *Id*. On information and belief, this culture contributed to Larry Reynolds' assault.

## CAUSES OF ACTION

### COUNT I
### STATE CREATED DANGER — 42 U.S.C. § 1983
### AND THE DUE PROCESS CLAUSE

18. Plaintiff re-alleges paragraphs 1-18, inclusive.

19. Plaintiff Larry Reynolds had a constitutional right under the Due Process Clause of the Fourteenth Amendment to personal security and bodily integrity and not to be subject to affirmative acts which placed him at an unreasonable risk of violence from others. This right was well-established at the time and was further known to these Defendants.

20. On information and belief, Warden's Eller and Boyd, along with Defendant Williams, and others acting under the control of the State of Tennessee and the Warden's were

---

[2] *See* TDOC Performance Audit Report, Tennessee Comptroller of the Treasury (Jan. 2020), *available at* https://ewscripps.brightspotcdn.com/3b/f5/d2a1a4114ca9888b607ac30a9d0b/embargoed-tdoc-audit-2020.pdf (last accessed August 6, 2020).

aware of these inmates violent and aggressive history, and nonetheless granted and allowed access to Mr. Reynolds. In addition, the Wardens and Defendant Williams among others acting under his control and authority affirmatively implemented policies which created an unreasonably dangerous situation in which NECX became woefully understaffed and unable to effectively monitor its inmates and keep Reynolds safe.

21. The Defendant Warden's or in the alternative someone acting on their behalf actions in assigning inmates and the other actions that led to understaffing and lack of oversight at NECX served no compelling government interest, and in fact these actions were directly contrary to the public's interest in the operation of safe and secure prisons in the State of Tennessee.

22. Wardens Eller and Boyd along with Defendant Williams acted with reckless disregard and deliberate indifference to the very real risk that someone would be subject to violence at the hands of Inmate attackers with a violent offense history. In addition to being aware that inmates would have access to Mr. Reynolds, their policies and procedures would increase the likelihood they would have access to non-violent inmates.

23. These constitutional violations by these Defendants were the direct and proximate cause of Plaintiff's injuries and damages.

**COUNT II**
**PREMISES LIABILITY — TENNESSEE COMMON LAW**

24. Plaintiff re-alleges paragraphs 1-23, inclusive

25. The State of Tennessee, its appointed Commissioner, TDOC, and its agents the Wardens Eller and Boyd as the entity and the individual responsible for the maintenance and operation of NECX, The State of Tennessee and the Warden Defendants, along with Defendant Williams owed a duty of care to Larry Reynolds. Mr. Reynolds without the pleasure of freedom relied on the Wardens, the State of Tennessee through its Governor, and Defendant Williams while

imprisoned and or in the alternative those under their control to take reasonable measures to ensure that he was safe. This duty of care, most notably the duty to provide security and adequate monitoring on site of a corrections facility that housed violent offenders such as these inmate attackers.

26. These Defendants breached their duty of care by failing to put in place sufficient measures to ensure Mr. Reynolds was secure, and these inmates were appropriately monitored and secured, to avoid incidents in which violent inmates would gain unlawful access to helpless inmates. On information and belief, these Defendants breached this duty of care by failing to adequately train its officers to monitor and secure inmates and appropriately and swiftly respond when incidents occur.

27. These Defendants specifically breached this duty by allowing inmates who had a violent and aggressive history, to be placed in a position and also by ignoring warning signs that of assault. A **reasonable** owner/operator of a premises known to house violent offenders would have ensured that the cell of Mr. Reynolds was appropriately monitored and secured.

28. Because of Defendants breach of the duty of care owed to Mr. Reynolds, Mr. Reynolds suffered and injury.

## COUNT III
## NEGLIGENCE / GROSS NEGLIGENCE — TENNESEE COMMON LAW

29. Plaintiff re-alleges paragraphs 1-28, inclusive.

30. These Defendants, the State of Tennessee, including Warden's Eller and Boyd and Defendant Williams and those acting under their control and authority owed a duty of care to Mr. Reynolds to operate NECX in a manner that was reasonably safe and secure, providing proper monitoring of its inmates with known violent and/or aggressive histories, train its corrections

officers to adequately monitor and secure such inmates, and provide for sufficient staffing at NECX to ensure the prison was safe and secure.

31. These Defendants and others acted unreasonably, or otherwise with a conscious or reckless disregard to the foreseeable and substantial risk that inmats n and/or violent inmates like would assault inmates, or otherwise that understaffing, insufficient training, and lack of oversight at NECX would lead to instances of inmate-on-inmate assault. The Unknown Corrections Officers likewise breached a duty by failing to appropriately monitor and secure these inmates, respond swiftly. The foreseeable result of the Defendants' actions and inactions was Mr. Reynolds, or other inmates at NECX would suffer grievous injuries or death at the hands of violent inmates recklessly unmonitored and unsecured.

32. The State of Tennessee and the Wardens Eller and Boyds' actions and policies were directly responsible for the assault of Mr. Williams. Similarly, the Unknown Corrections Officers' failure to appropriately respond when Mr. Reynolds was assaulted.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff, sues and demands judgment from the Defendant's, and respectfully requests an order from this Court awarding damages and compensation for the following:

1. An award of actual, consequential and incidental damages in such amounts as are sufficient to compensate in full the Plaintiff for the losses and damages actually incurred as a result of the Defendants' wrongdoing;

2. An award of punitive damages to be determined by the Jury as fair and reasonable in an amount adequate to punish the Defendants and serve as an example to deter similar conduct in the future;

3. An award of the Plaintiff's costs and expenses incurred in connection with this action, including attorneys' fees, expert witness fees and all other costs herein;

4. An award of pre-judgment and post-judgment interest as the Court deems appropriate;

5. Attorneys' fees, to the fullest extent allowable by the statutes generally referenced herein and/or the common law applicable to this case, including but not limited to the extent permitted under 42 U.S.C. § 1988; and

6. Statutory and discretionary cost(s);

7. All such further relief, both general and specific, to which he may be entitled;

8. Plaintiff request that a Jury be impaneled to hear this cause

**RESPECTFULLY SUBMITTED**, this the **15th** day of **July**, **2023**.

By: _____ *for The Firm*
Troy L. Bowlin, II No. 025893
*Attorney for Plaintiff*
2042 Town Center Blvd. Suite 364
Knoxville, TN 37922
Telephone: 865.245.2011
troy@tblf-pc.com