UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| LARRY REYNOLDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 2:23-CV-86-TAV-CRW |
| BILL LEE, *et al.* | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendants' Motions to Dismiss [Docs. 44, 58].[1] Plaintiff responded in opposition [Doc. 62], and the time for defendants to reply has passed. Accordingly, this matter is ripe for resolution. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court will **DENY as moot** defendants' previously filed Motion to Dismiss [Doc. 44], **GRANT** defendants' Motion to Dismiss [Doc. 58], and this case will be **DISMISSED**.

### I. Background

This suit arises from an assault on plaintiff by other inmates during his incarceration at Northeast Correctional Complex ("NECX") in Mountain City, Tennessee. He seeks money damages, punitive damages, and an award of attorney's fees due to defendants' alleged violation of his Constitutional rights and their alleged negligence.

---

[1] After defendants filed their first Motion to Dismiss [Doc. 44], plaintiff amended his complaint [Doc. 54]. While defendants' motions share much in common, the Court focuses its attention to their more recent Motion to Dismiss [Doc. 58] as it was filed in response to plaintiff's amended complaint [Doc. 54].

Plaintiff alleges that defendants, collectively and individually, failed to provide adequate security, were negligent in training and supervising corrections officers at NECX, and failed to classify and monitor inmates [Doc. 54 ¶¶ 22–24]. Specifically, he asserts that Tennessee Governor Bill Lee is responsible for the implementation of the state's correctional system, including the safety and security of inmates [*Id*. ¶ 16]. Additionally, he alleges that three different Commissioners of the Tennessee Department of Correction ("TDOC") share similar responsibilities to prevent dangerous conditions [*Id*. ¶ 17]. Plaintiff also names the chief administrative officers of NECX, Wardens Brett Eller and Bert Boyd [*Id*. ¶ 18]. Finally, Stacy Williams, a correctional officer, appears in plaintiff's allegations, though this defendant's exact involvement is unclear from the face of his complaint [*Id*. ¶ 22].

In addition to these allegations, plaintiff cites Governor Lee's recent efforts in criminal justice reform and a reduction in TDOC staffing since around 2015 [*Id*. ¶¶ 25–26]. He appears to assert that these policy forces contributed to his assault at NECX, though the exact connection between these events is somewhat unclear from the face of his complaint. In subsequent sections, he notes "[o]n information and belief" that TDOC actively downplayed rates of inmate violence in response to public scrutiny [*Id*. ¶ 32]. Plaintiff first raises a claim under 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment (Count I). He also alleges negligence (Count II) and premises liability (Count III) claims on substantially similar grounds [*Id*. ¶¶ 36–41, 42–47].

## II. Standard of Review

Defendants have brought their motion to dismiss, in relevant part, under Federal Rule of Civil Procedure 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of

3

those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### III. Analysis

#### a. Sovereign Immunity of the State of Tennessee, its Officials, and Agencies

Defendants move to dismiss plaintiff's claims against the State of Tennessee, Governor Bill Lee,[2] the Tennessee Department of Correction, the Commissioners of TDOC, and Wardens Bret Eller and Bert Boyd on grounds of sovereign immunity [Doc. 59, p. 5]. Specifically, they cite case law supporting the proposition that the Eleventh Amendment to the United States Constitution bars suits against States, their officials, and their agencies [*Id*. at 5–6].

Plaintiff responds that these defendants are not protected by sovereign immunity because state officials sued in their personal capacity can be held liable for actions taken under color of law [Doc. 62, p. 2]. Additionally, or alternatively, plaintiff claims that he seeks "injunctive relief to address ongoing systemic issues within TDOC" and therefore his claims are cognizable under the exception to sovereign immunity recognized by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).

---

[2] Defendants separately allege that plaintiff lacks standing to sue Governor Lee, citing a recent opinion from the United States Court of Appeals for the Sixth Circuit [Doc. 59, pp. 3–4 (citing *Doe v. Lee*, 102 F.4th 330, 335 (6th Cir. 2024))]. For the reasons set forth in this section, it is unnecessary to address this independent basis for dismissal.

4

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance," meaning that the "Eleventh Amendment bars [§ 1983] suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). In *Will*, Justice White explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id*. at 71 (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." *Id*.

Courts have also held that "the Eleventh Amendment immunizes departments and agencies of the states." *Dubuc v. Mich. Bd. of L. Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984)). To determine whether a department or agency is immunized, the United States Court of Appeals for the Sixth Circuit held that "the primary issue is whether the state would ultimately be liable for any money judgment against the entity." *Id*. (citing *Brotherton v. Cleveland*, 173 F.3d 552, 560–61 (6th Cir. 1999)). "Courts, however, also look to other factors, such as how state law defines the entity and the degree of control the state maintains over the entity." *Id*. (citing *Brotherton*, 173 F.3d at 561).

5

Here, the State of Tennessee, its officials, and its agencies are entitled to sovereign immunity, which bars plaintiff's claims sounding under § 1983 (Count I), negligence (Count II), and premises liability (Count III). Plaintiff's claims against the State, itself, are plainly barred by the Eleventh Amendment [*see* Doc. 54 ¶ 2]. Additionally, because he named Governor Lee "in his official capacity as the Governor of Tennessee," plaintiff's claims against Governor Lee are similarly barred [*Id.* ¶ 3]. *See Will*, 491 U.S. at 71. TDOC is an agency of Tennessee, which plaintiff appears to acknowledge [*Id.* ¶ 4], and is therefore immunized, as well. *See Dubuc*, 342 F.3d at 615. Plaintiff's claims against Frank Strada, Tony Parker, and Lisa Helton in their respective official capacities as Commissioners of TDOC are also barred. *See Will*, 491 U.S. at 71. Finally, NECX Wardens Brett Eller and Bert Boyd, and Officer Stacy Williams are immune from suit in their respective official capacities as state correctional officials [*see* Doc. 54 ¶¶ 6–8].[3]

As for plaintiff's argument that he seeks "injunctive relief to address ongoing systemic issues within TDOC," thereby triggering *Ex parte Young*, no such basis for relief appears in his complaint [*see* Doc. 54, pp. 13–14]. His request for compensatory and punitive damages, as well as attorney's fees, constitutes retrospective relief, which falls outside the prospective relief authorized by the Supreme Court in *Ex parte Young*. *See* 209 U.S. at 149 (emphasis added) ("The question that arises is whether there is a remedy that the parties interested may resort to, by going into a Federal court of equity, in a case

---

[3] Although plaintiff does not specify the identities of "Unknown Corrections Officers," or the capacity in which he intends to sue these individuals, any official capacity claims would also be barred [*see* Doc. 54 ¶ 9].

6

involving a violation of the Federal Constitution, and obtaining a judicial investigation of the problem, and, pending its solution, obtain freedom from suits, civil or criminal, by a *temporary injunction*, and, if the question be finally decided favorably to the contention of the company, a *permanent injunction* restraining all such actions or proceedings.").

In sum, after the application of sovereign immunity principles, defendants' motion [Doc. 58] is **GRANTED** as to the State of Tennessee, TDOC, and all other defendants in their official capacities. At this stage, plaintiff's complaint may only proceed against defendants Strada, Parker, Helton, Eller, Boyd, and Williams in their personal capacities.

### b. Personal Capacity Claims Against Remaining Defendants

#### i. Respondeat Superior Liability under Section 1983

Defendants argue that defendants Strada, Helton, Parker, Boyd, and Eller should be dismissed from this suit on the separate ground that respondeat superior claims are not cognizable under §1983 [Doc. 59, p. 6]. Specifically, they argue that plaintiff's allegations as to these defendants, which include failure to train and supervise, are impermissible theories of recovery under controlling precedent [*Id*. at 7].

Plaintiff responds that these defendants may still be held liable where he can prove that they were aware of certain risks of harm and ignored these risks [Doc. 62, p. 3 (citing *Comstock v. McCrary*, 273 F.3d 693, 704 (6th Cir. 2001))]. Additionally, he argues under a separate heading that the Sixth Circuit has authorized supervisory liability where defendants "implicitly authorized or approved wrongful conduct" [*Id*. at 4 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F. 2d 869 (6th Cir. 1982)].

7

The Supreme Court has held that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Put somewhat differently, "the term 'supervisory liability' is a misnomer" in a § 1983 suit because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677.

Here, plaintiff's remaining claims against defendants Strada, Parker, Helton, Boyd, and Williams in their respective personal capacities are not cognizable under Section 1983. The complaint's allegations as to these defendants falls squarely within the form of supervisory liability that has been rejected in the § 1983 context by the Supreme Court. *See Iqbal*, 556 U.S. at 676. For example, plaintiff alleges that:

> Wardens Brett Eller and Bert Boyd, as the chief administrative officers of [NECX] and other facilities, are responsible for maintaining security, classifying inmates, and ensuring that the prison is adequately staffed and safe. They are also charged with implementing TDOC policies within their respective facilities. The failure of these wardens to properly manage their duties directly contributed to the unsafe conditions that led to the Plaintiff's injuries.

[Doc. 54 ¶ 18]. This closely parallels the theory of recovery that respondent advanced in *Iqbal* (e.g., implementing a policy with "discriminatory criteria to make classification decisions among detainees") and that the Supreme Court rejected, holding "[r]espondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents." *Id*. at 677.

Beyond these broad supervisory allegations, plaintiff does not allege that these defendants took specific actions to ratify the allegedly unconstitutional conduct of their subordinates or otherwise engaged in "purposeful and unlawful" conduct. *Id*. at 687.  None of the numbered paragraphs appearing under the heading "Specific Allegations" describe specific actions, omissions, or decisions by these defendants that contributed to plaintiff's injuries [*see* Doc. 54 ¶¶ 22–26].  Instead, he cites "understaffing and poor training," a "lack of adequate training and supervision of corrections officers," "systemic issues within TDOC," and a state-wide reduction in staffing beginning in 2015 [*see id*.].

And plaintiff's citations to *Comstock* and *Hays* are inapposite.  In the former case, the Sixth Circuit expressly held that "[a] supervisor is not liable for failing to supervise the offending employee unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Comstock*, 273 F.3d at 712–13 (quoting *Hays*, 668 F.2d at 874).  In the latter case, which was quoted by the *Comstock* court, the Sixth Circuit previously held that "a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either *encouraged* the specific incident of misconduct or in some other way *directly participated* in it."  *Hays*, 668 F.2d at 874 (emphasis added).  However, in a subsequent case, the Sixth Circuit acknowledged that *Hays* was "undermine[d]" by an intervening Supreme Court decision.  *Brandon v. Allen*, 719 F.2d 151, 154 (6th Cir. 1983) (discussing the impact of *Parratt v. Taylor*, 451 U.S. 527, 534 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)), *rev'd sub nom. Brandon v. Holt*,

469 U.S. 464 (1985). So, although plaintiff cites outdated case law, he is correct that section 1983 does not contain a "state-of-mind requirement," including in supervisory liability claims. *Parratt*, 451 U.S. at 534 (1981). Nevertheless, even with this standard in view, plaintiff has not alleged any connection between these defendants' supervisory capacities and his injuries. *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (holding that plaintiff alleging supervisory liability must plead "a causal connection between the defendant's wrongful conduct and the violation alleged"); *Hollis v. Erdos*, No. 1:19-CV-436, 2020 WL 2395567 (S.D. Ohio May 12, 2020) (granting in part defendants' motion for judgment on the pleadings as "there is simply no allegation that directly ties the Warden's alleged failure to train or failure to supervise to the specific incident here").

In sum, plaintiff's claims against these supervisory defendants are not cognizable under § 1983 via the theories alleged. Accordingly, defendants' motion [Doc. 58] is **GRANTED** as to Count I, except as to the personal capacity of defendant Williams. Therefore, only plaintiff's tort claims (Counts II and III) against defendants Strada, Helton, Parker, Boyd, Eller, and Williams in their personal capacities, and his § 1983 personal capacity claim against defendant Williams (Count I) remain at this stage of the Court's analysis.

### ii. Pleading Requirements as to Defendant Williams

Defendants challenge plaintiff's claims against defendant Williams on two bases [Doc. 59, pp. 7–8]. First, they argue that he has failed to adduce any specific actions taken by defendant Williams that sufficiently confers Article III standing upon plaintiff [*Id*. at 7].

Second, they argue that plaintiff's omission of the "date, location, description of the assault, and description of the injuries" from the complaint renders his allegations insufficiently particularized under the relevant pleading standard [*Id*. at 8].

Plaintiff responds by arguing that his allegations of "understaffing, poor training, and the failure to classify violent inmates" provides enough detail to surpass the pleading requirement [Doc. 62, p. 3]. He also cites *Farmer v. Brennan*, 511 U.S. 825 (1994) for the proposition that an Eighth Amendment deliberate indifference claim requires a plaintiff to plead merely that "prison officials knew of and disregarded a substantial risk to inmate safety" [*Id*. at 4].

The Court finds that plaintiff has failed to plead sufficient facts to support the facial plausibility of his claims against defendant Williams. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Even "constru[ing] the complaint in a light most favorable to plaintiffs, accept[ing] all well-pled factual allegations as true," as the Court must, plaintiff's claims omit essential information that he would need to prove in order to obtain relief. *Bishop*, 520 F.3d at 519. Among the eight substantive mentions of defendant Williams in plaintiff's complaint, each essentially recites legal conclusions without substantiating factual material. For example, he alleges that "Stacy Williams failed to ensure that NECX was adequately secured" [Doc. 54 ¶ 22]. Later, he alleges that "Stacy Williams was aware of the risk, was on notice and failed to ensure the safety of the Plaintiff through ensure [*sic*] proper classifications" [*Id*. ¶ 24]. As a final example, he states that "Defendants failed to provide necessary training and supervision to correctional officers, including Officer Stacy

11

Williams" [*Id.* ¶ 38(C)]. None of these conclusory legal statements are accompanied by, for example, dates, locations, descriptions of specific actions taken by defendant Williams, or even a description of plaintiff's injuries. The Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery*, 346 F.3d at 698. In sum, plaintiff's complaint as to defendant Williams is fatally devoid of factual material that, if proven true, would entitle him to relief.

And plaintiff's citation to *Farmer* does not resolve the issue. There, the Supreme Court explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. This description of the substantive claim alleged in Count I only further confirms the significance of plaintiff's omission of "facts from which the inference could be drawn that a substantial risk of serious harm exists," as well as allegations that defendant Williams was aware of such facts. *Id.* Without a date, location, description, or any other indication of plaintiff's injuries and, crucially, *how* defendant Williams is connected to these injuries, the Court finds that plaintiff has not plausibly alleged a violation of the Eighth Amendment under the standard announced in *Farmer*. *See also Hensley Mfg*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555). In sum, plaintiff's § 1983 claim against defendant Williams fails under the pleading standard. Accordingly, defendants' motion [Doc. 58] is **GRANTED** as to Count I in its entirety.

### iii. Supplemental Jurisdiction over State Claims

Having addressed sovereign immunity and dismissed Count I, only plaintiff's state tort claims (Counts II and III) against defendants Strada, Helton, Parker, Boyd, Eller, and Williams in their personal capacities remain. Although plaintiff does not specify from whence his negligence and premises liability claims arise, he appears to acknowledge that these are both "state law claims" over which the Court may exercise supplemental jurisdiction [*see* Doc. 54 ¶ 11; Doc. 62, p. 5]. Because Count I, which alleged a federal question, has been dismissed, the Court must determine whether it will exercise supplemental jurisdiction over Counts II and III as to the remaining defendants.

A court may decline to exercise supplemental jurisdiction over claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Exercising such discretion here, as the Court has found that the sole federal question raised in plaintiff's complaint is dismissed, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, defendants' motion [Doc. 58] is **GRANTED** as to plaintiff's remaining state law claims.

### IV. Conclusion

For the reasons set forth above, defendants' previous Motion to Dismiss [Doc. 44] is **DENIED as moot**, their Motion to Dismiss [Doc. 58] is **GRANTED** and this case will be **DISMISSED**. An appropriate order shall enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE